UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

STEPHEN HUSSEY,

        Plaintiff,

-v-                                     No. 11 Civ. 3360 (LTS)(RLE)

METRO-NORTH COMMUTER RAILROAD,

        Defendant.

-------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAR 2 3 2012

## MEMORANDUM OPINION AND ORDER

In this action, Stephen Hussey ("Plaintiff") alleges that his employment was wrongfully terminated in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Railroad Labor Act ("RLA"), 45 U.S.C. § 151 et seq. Plaintiff seeks an order vacating award No. 135 (the "Award") of Special Adjustment Board No. 1001 (the "Adjustment Board"), which upheld his termination, as well as reinstatement to his previous position and money damages under 45 U.S.C. § 153(First)(q). Metro-North Commuter Railroad ("Defendant" or "Metro-North") moves to dismiss Plaintiff's complaint for lack of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331 and 45 U.S.C. § 153(First)(q).

The Court has reviewed carefully the administrative record and all of the parties' submissions in this case. For the reasons set forth below, Defendant's motion is granted.

## BACKGROUND

At the time of the incident giving rise to this action, Plaintiff was employed as a General Maintenance Supervisor at Grand Central Terminal. (Amended Complaint ("Compl.") ¶ 1.) On July 16, 2010, Metropolitan Transit Authority ("MTA") officers entered Plaintiff's office in response to an anonymous tip and found him and two others sitting at a table on which whiskey, marijuana, and drug paraphernalia were visible. (Compl. ¶ 7; Declaration of Frank Rinaldi ("Rinaldi Dec.") ¶ 5.)

Plaintiff received a notice on July 22, 2010 that he was being charged with: (1) violating Metro-North's substance abuse policy, (2) displaying conduct unbecoming of a Metro-North employee by possessing alcohol, drugs, and drug paraphernalia on Metro-North property, and (3) displaying conduct unbecoming of a Metro-North employee by failing to perform his duties as assigned "in that . . . while on duty . . . [Plaintiff was] in an office . . . in Grand Central Terminal with two other employees with a controlled substance, drug paraphernalia and alcohol present." (Compl. ¶ 10; Ex. 1 to Compl.) Plaintiff pled "no contest" to the charge of violating Defendant's substance abuse policy and sought a waiver letter under the Operation SAVE Agreement (the "SAVE Agreement") to enter a drug and alcohol treatment program. (Compl. ¶ 12; SAVE Agreement, attached as Ex. A to Declaration of Carlyet Mashburn ("Marshburn Decl.").) The SAVE Agreement is an agreement between Metro-North and the American Railway & Airway Supervisors' Association ("ARASA"), which requires Metro-North to offer an employee a waiver letter to enter a drug treatment program when he or she commits a "substance rule violation which is a first offense and which does not involve any other apparent rule violation." (SAVE Agreement ¶¶ 1-4.) During treatment, the employee is deemed "absent due to illness," and once the employee finishes treatment he or she may be restored to service.

(Id.) The SAVE Agreement provides that, in the event of a dispute over the interpretation of its provisions, a committee of three must be constituted to resolve the dispute. (Id. ¶ 8.)

On August 18, 2010, a hearing was held on the three charges. (Compl. ¶ 11.) At the hearing, Plaintiff (through his union representative) argued that he qualified for a waiver letter because it was his first offense and because the second and third charges were derivative of the drug and alcohol offense, not "other apparent rule violation[s]." Plaintiff also argued that Metro-North improperly denied him a waiver letter due to the media attention that his case had received. (Hrg. Trans. at 103-04, attached as Ex. D-2 to Rinaldi Decl.) Lastly, he argued that Defendant violated the SAVE Agreement by failing to call the committee of three to resolve the disagreements over the meaning of "any other apparent rule violation," despite repeated requests by his union. (Id. at 98-102.) On September 2, 2010, Plaintiff was found guilty of all three charges and was dismissed from service. (Compl. ¶ 13; Notice of Discipline, attached as Ex. E to Rinaldi Decl.)

On September 16, 2010, ARASA appealed Plaintiff's termination to Defendant's Labor Relations Department. (Compl. ¶ 13.) Plaintiff reiterated his argument that he was entitled to a waiver under the terms of the SAVE Agreement. (See Appeal of Disciplinary Action, attached as Ex. F to Rinaldi Decl.) Plaintiff did not raise the argument that Metro-North was obligated to constitute a three-person committee to resolve interpretive disputes regarding the Agreement's language. The Labor Relations Department denied the appeal, stating that the language of the SAVE agreement was not mandatory where, as in Plaintiff's case, there were "other apparent rule violations." (Administrative Decision at 2, attached as Ex. G to Rinaldi Decl.)

Plaintiff appealed his termination to the Adjustment Board (the "Board"),

advancing essentially the same arguments he had made before the Labor Relations Department. (Employee's Submission to the Board at 5, attached as Ex. H to Rinaldi Decl.) Once again, Plaintiff neglected to raise Defendant's failure to convene the committee of three. On November 24, 2010, the Board upheld Plaintiff's termination. (Compl. ¶ 15.) The Board concluded: "Although we do concur with the Organization's view that Charges 2 and 3, as drafted, could be construed as somewhat over-blown piling on, we find no fatal error in the redundancies." (Decision of Special Board of Adjustment No. 1001 (the "Award") at 7, attached as Ex. I to Rinaldi Decl.)

Plaintiff commenced this action on May 18, 2011, seeking vacatur of the Award and compensatory and punitive damages. Defendant now moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Amended Complaint.

## DISCUSSION

The statutory provision under which Plaintiff brings his claim provides, in relevant part:

> If any employee . . . is aggrieved by any of the terms of an award [by any division of the Adjustment Board ] . . . then such employee or group of employees or carrier <u>may file in any United States district court</u> . . . a petition for review of the division's order. . . . The court <u>shall have jurisdiction</u> to affirm the order of the division, or to set it aside, in whole or in part, or it may remand the proceedings to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, [1] for failure of the division to comply with the requirements of this chapter, [2] for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or [3] for fraud or corruption by a member of the division making the order.

45 U.S.C.A. § 153(First)(q) (West 2010) (emphasis added). In its opening papers, Defendant

asserts that Plaintiff cannot establish any of the three statutory grounds for vacatur or remand of the award and argues that the Court therefore lacks subject matter jurisdiction of this action. Plaintiff, on the other hand, contends that the review limitation provision merely goes to the elements of a cause of action for vacatur or remand and that Defendant's motion must therefore be determined as one under Rule 12(b)(6) or Rule 56 for dismissal on the merits. In its reply papers, Defendant captioned the motion as one seeking dismissal under Rules 12(b)(1) and 12(b)(6).

Plaintiff's argument is consistent with the language of the statute. The first two sentences of the statute explicitly provide that the Court has jurisdiction over challenges to a Board's award. The last sentence, which delineates the circumstances under which an order may be set aside or remanded, makes no reference to the Court's jurisdiction. In <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500 (2006), the Supreme Court instructed courts and litigants to use the language of the applicable statute as a "bright line" in determining whether a restrictive statutory provision is jurisdictional: "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue . . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." 546 U.S. at 515-16 (footnote and citation omitted). Accordingly, the Court will treat the instant motion as one directed to the merits of Plaintiff's claim for vacatur of the Award.

When deciding a motion to dismiss a complaint for failure to state a claim under Rule 12(b)(6), the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] reasonable inferences in favor of the non-moving party." <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 191 (2d Cir. 2007). While detailed factual allegations are not required, "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Pleadings consisting only of "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotations and citations omitted).

In determining a Rule 12(b)(6) motion to dismiss, the Court may consider the complaint, any exhibit attached to the complaint, materials incorporated in the complaint by reference, and documents that, "although not incorporated by reference, are 'integral' to the complaint." Schwartzbaum v. Emigrant Mortgage Co., No. 09 Civ. 3848, 2010 WL 2484116, at *3 (S.D.N.Y. June 16, 2010). A document is integral to the complaint if the complaint "relies heavily upon its terms and effect." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (internal quotations omitted). If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, controls, and the court need not accept the allegations in the complaint as true. Barnum v. Millbrook Care Ltd. Partnership, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994).

Plaintiff's RLA Claims

Under the RLA, disputes such as Plaintiff's claim of termination in violation of the CBA are within the exclusive jurisdiction of the National Railroad Adjustment Board ("NRAB") and the Special Boards of Adjustment. See 45 U.S.C. §§ 153(First)(i), (Second). "[T]he scope of judicial review of Adjustment Board decisions is among the narrowest known to the law." Union Pacific R. Co. v. Sheehan, 439 U.S. 89, 91 (1978). The Supreme Court has

confirmed that judicial review of an Adjustment Board decision is confined to three statutorily-specified grounds: "(1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption." Union Pacific R. Co. v. Sheehan, 439 U.S. 89, 93 (1978); Union Pacific R. Co. v. Brotherhood of Locomotive Engineers & Trainmen General Committee of Adjustment, Cent. Region, 130 S. Ct. 584, 592-93 (2009). Where these narrow grounds for judicial review are not implicated, the Adjustment Board's decision is "conclusive on the parties." CSX Transp., Inc. v. United Transp. Union, 950 F.2d 872, 877 (2d Cir. 1991) (internal quotations omitted). A court may not substitute its own judgment for the Adjustment Board's, even if that court would have reached a different result. Id. at 811; see also Russell v. American Eagle Airlines, Inc., No. 07 Civ. 4119(NG), 2008 WL 2600856, *3 (E.D.N.Y. July 1, 2008) ("[An Adjustment Board] decision cannot be set aside even if the court disagrees with the result or rationale, because the reasoning was vague or ambiguous, because the decision was arbitrary and capricious, or because the decision was not supported by substantial evidence.") (internal quotations and citations omitted). Unless fraud is an issue, courts "ask only whether the arbitrators did the job they were told to do – not whether they did it well, or correctly, or reasonably, but simply whether they did it." United Transp. Union v. National R.R. Passenger Corp., 588 F.3d 805, 810 (2d Cir. 2009).

### Whether the Board Exceeded its Jurisdiction

Plaintiff asserts that, because he and Defendant disagreed as to whether he was entitled to a waiver under the SAVE Agreement, the Defendant was obligated to constitute a committee of three pursuant to that agreement to resolve an interpretive dispute; the failure to do

so, Plaintiff claims, deprived the Board of jurisdiction to uphold his termination. Accordingly, the Board should have reversed the lower administrative decisions and ordered Defendant to convene such a committee to resolve the dispute. (Compl. ¶ 89-112.)

This claim conflicts with the clear language of the RLA, which provides for Board resolution of employee-carrier disputes "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" that have not been resolved successfully through carrier-based procedures. 45 U.S.C.A. § 153(First)(i) (West 2010). It was clearly within the Board's jurisdiction to determine the applicability of the SAVE Agreement in connection with its consideration of Plaintiff's petition challenging his termination. The Court further notes that Plaintiff's argument with respect to the committee of three may in any event have been waived, as there is no indication that Plaintiff raised it in the administrative review process.

Plaintiff also claims that the Board exceeded its jurisdiction because the Board misinterpreted the phrase "other apparent rule violation" in the SAVE Agreement. This argument is unavailing. The Board has the power to construe the provisions of the parties' CBA and the SAVE Agreement, including the meaning of the phrase "other apparent rule violation." Plaintiff has not met its burden of showing that the Board's interpretation of the CBA and the SAVE Agreement was "wholly baseless and completely without reason," Giraud v. MTA Metro-North R. Co., No. 09 Civ. 2187(PGG), 2010 WL 931886, at *4 (S.D.N.Y. Mar. 12, 2010) (quoting Gunther v. San Diego & Arizona E. Ry., 382 U.S. 257, 261 (1965)), and the Court is not permitted to second-guess the Board's interpretation of the CBA. See United Transp. Union, 588 F.3d at 811.

Plaintiff further alleges that his discharge was the product of fraud or corruption. In his Complaint, Plaintiff alleges that Metro-North refused to grant him a waiver under the SAVE Agreement in response to negative press coverage surrounding his case. In his opposition papers, Plaintiff expands upon the fraud/corruption allegation, claiming that the Board did not "fully vet all of the issues" and ignored jurisdictional challenges to its authority, thereby "rewriting" the SAVE Agreement and assisting in Defendant's refusal to issue a waiver letter to Plaintiff. (Opp. Memo. at 19-20.)

As to the first allegation, the language of 45 U.S.C. § 153(First)(q) only allows the Court to set aside an award when there is fraud or corruption <u>by a member of the Arbitration Board</u>. <u>DeClara v. Metropolitan Transp. Authority</u>, 748 F. Supp. 92, 95 (S.D.N.Y. 1990). Plaintiff, however, only alleges that Defendant and its employees – not members of the Board – were influenced by the press coverage. Plaintiff's assertion that the Board acted fraudulently by failing to countermand Defendant's refusal to grant a waiver letter is likewise unavailing. To state a claim for vacutur of the Award under the fraud/corruption prong of § 153(First)(q), Plaintiff would have to show, at a minimum, that the Board "exhibit[ed] a complete unwillingness to respond, and indifference, to any evidence or argument in support of [his] position[]." <u>Smith v. American Eagle Airlines, Inc.</u>, No. 07 CV 3363(NG), 2008 WL 2600857, at* 4 (E.D.N.Y. July 1, 2008) (quoting <u>Pacific & Arctic Ry. & Navigation Co. v. United Transportation Union</u>, 952 F.2d 1144 (9th Cir. 1991)). As noted above, Plaintiff appears not to have raised the committee of three issue before the Board at all. While he did press his claim that the second and third charges were not "other apparent rule violations," Plaintiff's papers show that the Board considered this argument and found it unconvincing. (<u>See</u> Decision of

Special Board of Adjustment No. 1001 at 7, attached as Ex. I to Rinaldi Decl.) The mere fact that Plaintiff disagrees with the Board's conclusion is insufficient to make out a claim of fraud or corruption.

Accordingly, Plaintiff has failed to state a claim for vacatur of the arbitration award under the RLA.

Plaintiff's Other Claims

Plaintiff also alleges that (1) his termination constituted disparate treatment in violation of Title VII, 42 U.S.C. § 2000e et seq., and (2) his termination violated a "well-defined and dominate [sic] public policy" of providing first-time drug and alcohol users a waiver letter to enter a treatment program. (Compl. ¶¶ 23-26.)

To establish a prima facie case of discrimination a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position held; (3) he suffered an adverse employment action; and (4) the circumstances surrounding the action gave rise to an inference of discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). Plaintiff has not alleged that he is a member of a protected class, nor has he pled any facts supporting an inference of discrimination. Accordingly, he has failed to state a claim under Title VII.

As for the public policy claim, Plaintiff fails to identify any authority demonstrating that he is entitled to relief on public policy grounds.

CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Amended Complaint is granted. This Memorandum Opinion resolves docket entry no. 11. The Clerk of

Court is requested to enter judgment in Defendant's favor and close this case.

SO ORDERED.

Dated: New York, New York
      March 23, 2012

                                                      /s/ Laura Taylor Swain

                                                      LAURA TAYLOR SWAIN
                                                      United States District Judge